## HARDEMAN COUNTY V. FOARD COUNTY.

Decided June 18, 1898.

1. **Counties—Suit Between—Taxpayers as Parties.**

An action by one county against another to recover the latter's proportion of their indebtedness incurred prior to their separation is properly brought against the people and taxpayers of the new county, under articles 764, et seq., of the Revised Statutes, providing therefor, although the new county was not entirely carved from the limits of the old one.

2. **Same—Validity of County Bonds.**

Bonds issued by a county to pay for a jail are not void because the commissioners court, at the date of their issuance, failed to make provision for their payment, since the statute provides for the levy and collection of the requisite taxes in such cases. Following Mitchell County v. Bank, 91 Texas, 370.

3. **Same—Same.**

Bridge bonds are excessive in amount and illegal and void to the amount of the excess where the county was already indebted, and the bonds were issued for a larger amount than a tax of 10 cents on the $100 valuation of property in the county would liquidate in ten years, contrary to the prohibition of article 986b, Sayles' Revised Statutes (1888).

4. **Same—Inaccuracy in Registry of Bonds.**

Bonds issued by a county can not be objected to on the ground that they were not properly registered, where the statute does not prescribe what the registration shall contain, and it showed the dates and amounts of the bonds sufficiently to identify them, although they were erroneously described as payable to the State instead of to the bearer.

5. **Same—Evidence—Tax Rolls.**

A county sued by another to recover its proportionate share of an indebtedness existing prior to its separation from the plaintiff county may show the double assessment on its tax rolls of certain conflicting surveys.

6. **Counties—Back Taxes.**

In computing the amount recoverable by a parent county from a new county separated from it in satisfaction of the latter's proportionate share of their common indebtedness, the new county is not entitled to be credited with back taxes collected after its creation under assessments previously made.

7. **Same—Back Taxes Go to New County.**

The phrase "unpaid assessments," in articles 5239-5243 of the Revised Statutes, providing that where a new county is created out of a part of another the tax collector of the new county shall collect the unpaid assessments on that portion of the county included within the limits of the new county, includes taxes that were delinquent at the time of the creation of the new county, and hence the latter is entitled to credit therefor where they have been collected by the older county after the organization of the new county.

APPEAL from Hardeman. Tried below before Hon. G. A. BROWN.

*S. J. Osborne, B. E. Green,* and *Duncan G. Smith,* for appellant.

*Huff & Huff* and *M. M. Hankins,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—Bonds to the amount of $10,000 were issued by Hardeman County in the year 1886, to pay for the construction of a jail at Margaret, then the county seat. In the year 1890,

the county seat having been moved from Margaret to Quanah, bonds to the amount of $18,000 were issued to build a courthouse, and afterwards, during that year, bonds were also issued to the amount of $43,000, to build bridges across the Pease River and Groesbeck Creek, in Hardeman County, and in the early part of the year 1891 still other bonds, to the amount of $10,000, were issued to build a jail at Quanah.

On March 3, 1891, an act of the Legislature was approved creating the county of Foard out of parts of the territory of Hardeman, King, Cottle, and Knox counties, but largely out of the territory of Hardeman, and in the following month the county of Foard was duly organized. All of the bonds above referred to were issued prior to the creation of Foard County, though the jail at Quanah, for which the last issue of jail bonds was made, was not accepted until March 23, 1891, which was after the creation and before the organization of the new county.

Up to April 10, 1896, Foard County made regular annual payments to the treasurer of Hardeman County of her proportionate part, as agreed upon by the county judges of the two counties, of the interest and principal of all the bonds of Hardeman County in existence at the date of the creation of Foard County, which money was regularly applied by the treasurer of Hardeman County, together with the corresponding payments of the latter county, to the extinguishment of the annual interest in full, as well as to the principal of certain of the bonds so paid off. Hardeman County had already paid a portion of the Margaret jail bonds when Foard County was created, and the rest of those bonds were thereafter extinguished by the conjoint payments of the two counties, made in the manner above stated, leaving outstanding against Hardeman County the courthouse bonds, bridge bonds, and Quanah jail bonds. Of these Hardeman County, between April 10, 1896, and April 10, 1897, besides paying the annual interest, amounting to $3960, redeemed three of the courthouse bonds, aggregating $3000, and four of the bridge bonds, aggregating $4000.

Foard County refused to make any further payments after April 10, 1896. This suit was consequently brought by Hardeman County August 16, 1897, against Foard County, to recover of the latter its proportionate part of the indebtedness and liabilities of the former.

The defenses interposed were (1) that the people and taxpayers residing in the territory taken from Hardeman County, rather than Foard County, were necessary parties defendant; (2) the statutes of limitation of two and four years; (3) the invalidity, upon various grounds, of the bonds; (4) a mistake or double assessment in the tax rolls of Foard County for the year 1891, to the amount of $131,150; and (5) an offset claimed not only on account of payments made by Foard County upon void bonds and in excess of her share, but also an offset or counterclaim of $553.56 for back taxes collected by Hardeman County after the creation of Foard County upon renditions made by citizens of the excised territory prior to the creation of Foard County.

The case was submitted to the court, without a jury, and upon con-

clusions of law and fact, printed in appellant's brief (pages 33 to 44), judgment was entered to the effect that the original issue of jail bonds made in 1886, to build the Margaret jail, were void; that the bridge bonds issued in 1890, for $43,000, were excessive to the amount of $16,-557, and hence illegal and void to that extent; and that as to these jail bonds, and as to this excess in the bridge bonds, Hardeman County take nothing. But upon the finding that there was still outstanding $47,443 of valid indebtedness against Hardeman County, with interest at 6 per cent per annum from April 10, 1897, and upon the further finding that the sum of $12,030.85 was the proportion of the principal for which Foard County was liable, it was decreed that Hardeman County recover from Foard County that sum, with interest at 6 per cent per annum from April 10, 1897, according to the terms of payment provided in the bonds "and in case any part of said sum, principal or interest, is not paid when so due, the amount so due shall bear interest from the date so due at 6  per cent per annum until finally paid." The judgment then proceeds: "It appearing that Foard County has heretofore paid to plaintiff $3242.50 more than Foard County's proportion of the valid debt which has been paid since the creation of defendant county, ordered that defendant have, and is hereby given credit for said sum of $3242.50, which shall be applied on the amount first coming due from Foard County on the unpaid bonds herein mentioned, said bonds as follows: 15 courthouse bonds for $1000 each, dated May 15, 1890, due May 15, 1905, with interest from April 10, 1897, at 6 per cent per annum, interest payable April 10 each year; 39 bridge bonds for $1000 each, dated December 2, 1890, due April 10, 1910, with interest from April 10, 1897, at 6 per cent per annum, payable April 10 each year; the amount valid of said bridge bonds is $22,443; 10 jail bonds for $1000 each, dated February 12, 1891, due February 12, 1906, with 6 per cent per annum from April 10, 1897, payable April 10 of each year. Territory taken from Hardeman and now included in Foard same as described in plaintiff's petition. Commissioners Court of Foard County ordered to annually levy and collect from taxpayers and property owners in said excised territory a tax sufficient to pay the interest annually accruing on said principal sum of $12,030.85, and to create a sinking fund sufficient to pay said principal at the time the same shall become due, according to the terms of said bonds, respectively, which sum so collected shall be paid and delivered by Foard County or its authorized officers to the county treasurer of Hardeman County, as the said payments shall become due as herein stated. Provided, that the taxes so levied and collected shall not for any one year exceed the constitutional limit; and provided further, that if the sum so levied and collected for any year shall be insufficient to pay the sum due for that year, then such levies and collections and payments shall be continued annually until this judgment is fully paid off, together with all costs by plaintiff in this behalf incurred."

To this judgment both parties, Hardeman County having perfected an appeal therefrom, assign errors. Inasmuch as the decision does not

turn upon conflicting evidence, and the material facts are fully and methodically stated in the printed briefs, together with the findings of the court, we proceed at once to state our conclusions upon the issues involved.

1. We agree with the district judge in overruling the contention that the people and taxpayers of that portion of Foard County taken from the territory of Hardeman County were not necessary parties defendant. It is true, the Constitution, article 9, section 1, provides in such cases that "the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing of the county from which it was taken;" but it further provides that this shall be done "in such manner as may be prescribed by law." Turning to the Revised Statutes, title 23, articles 764, 765, 765a, we find that provision is made for suit by the old county against the new, and not against the taxpayers of the excised territory, to enforce the provision of the Constitution above quoted, and, when suit becomes necessary to enforce the provision, we know of no other manner prescribed by law in which it may be done.

2. We also agree with his honor in overruling the limitation defense. As long as Foard County continued to pay, as it matured, her proportion of the indebtedness of Hardeman County existing at the date of the creation of the former county, which was done up to within less than two years of the institution of this suit, Hardeman County had no cause of action.

We do not understand this conclusion to be essentially at variance with the decision of our Supreme Court in Mills County v. Lampasas County, 90 Texas, 603, in which it was held that claims of this character are not such claims against a county as must be presented to the commissioners court for approval or rejection before suit can be instituted to collect them, as provided in article 790, Revised Statutes. True, in order to strengthen the ruling there made, some expressions were employed in the opinion of Chief Justice Gaines which may not be in accord with our interpretation of the Act of 1893, p. 124 (Revised Statutes, title 23, supra), entitled, "An Act to provide for the payment by new counties of their proportionate share of the indebtedness of the older counties from which they were created."

This act was passed, as appears from its last section, to provide a remedy for the enforcement of the constitutional obligation imposed upon that part of a new county taken from the old to pay its proportion of the liabilities of the latter county. Since the Constitution only imposed this obligation on "the part stricken off," and not on the new county, it became necessary for the Legislature (as directed in the Constitution) to prescribe the manner of enforcing the obligation. Consequently the very first section of the act, as indicated in the caption above quoted, provides for the enforcement of the obligation *through the medium of the newly organized county,* declaring that such new county "shall be held liable for and bound to pay its proportion of all the liabilities of the county or counties from which it was taken, existing at the date of its

creation of such *new county,* according to the proportionate value of the property in the excised territory and the value of the property remaining in the old county." It then provides that a suit to *recover* the same *may* be brought, etc., but it does not provide that suit *must* be brought to *establish* same, and we are loath to construe an act of the Legislature as intended to impose upon counties the expense of litigation where no necessity or occasion arises for suit.

The act itself provides the means of arriving at the proportion of liability by an arithmetical calculation based upon the tax rolls of the two counties, which are made "conclusive evidence of the property and value thereof remaining in the parent county and in the excised territory at the date of the creation of such new county." Since that is certain which may be made certain, it follows that the act itself establishes the proportion or extent of liability, leaving nothing for the new county to do but to perform a plain duty, and providing for suit in case of failure or refusal to perform such duty. It is true, the third section of the act expressly makes it the duty of the commissioners court of the new county, where judgment is recovered, to levy a tax on the excised territory to pay off such judgment; but if, as already seen, the act of the Legislature by its provisions, in pursuance of the Constitution, establishes the liability of the new county and the extent thereof, we see no reason why the commissioners court of such new county would not be authorized and obligated, without this express provision, to so levy a tax to provide for its payment as that "the part stricken off shall be holden for and obliged to pay its proportion," etc., according to the Constitution.

3. The Margaret jail bonds were held to be void, because the commissioners court at the date of their issuance failed to make provision for their payment; but this ruling can not now be sustained, since it has been held, both by this court and the Supreme Court, in the case of Mitchell County, as reported in 39 Southwestern Reporter, 628, and (upon writ of error) in 91 Texas, 370, that the acts of the Legislature had already sufficiently provided for the levy and collection of the necessary tax in such cases. Besides, as these bonds were voluntarily paid by the two counties, we doubt if Foard County could have recourse upon Hardeman County on account of the money so paid.

We agree with the district judge that the courthouse bonds were valid, and we also agree with him that the bridge bonds were excessive in amount. When they were issued the county was already indebted, and consequently was subject to the limitation in the issue of bonds imposed by the third section of the Act of 1887, p. 135, Sayles' Civil Statutes (1889), article 986b, which provides that "no county already indebted shall issue a larger amount of bonds than a tax of ten cents on the one hundred dollars valuation of property in the county will liquidate in ten years."

A further objection was made to the bonds, upon the ground that they had not been properly registered, but as the statute does not prescribe what the registration shall contain, and as we infer from the record that

in this case it showed the dates and amounts of the bonds, and sufficient to identify them, we think the mere fact that they were erroneously described in the registration as being payable to the State of Texas, instead of to bearer, would not invalidate them.

4.   We also approve the action of the court in allowing Foard County to show the double assessment on her tax rolls of 1891 of certain conflicting surveys.   It was agreed on the trial that the Cundiff block of surveys covered lands located by the Houston & Texas Central Railroad Company, to the extent of $131,150, and that said Cundiff and railroad surveys so in conflict were situated in that part of Foard County taken from Hardeman County; so that, if the conflict be eliminated, and the double assessment be corrected, the amount of property in the excised territory, as shown by the tax rolls for the year 1891, would be reduced by $131,-150.   While the tax rolls are made conclusive evidence of the property in the excised territory and the value thereof, in order to ascertain whether a given survey appearing in such rolls is in that territory, its locality in the county would have to be looked to, and we do not see how this could be determined by an inspection of the tax rolls alone.   The identity and value of the survey are there given, but the map of the county must determine where it is situated.   Because the tax rolls, read in the light of the map of the county, show that the same land, as in this instance, has been twice listed and enrolled, it does not follow that the tax rolls show two tracts of land in the excised territory when the map shows only one. Nor could the mere footing of the tax rolls as to the value of the property in the excised territory be, in the nature of things, conclusive.   Besides, it is just, equitable, and in furtherance of the constitutional provision itself to allow the correction.

5.   We are of opinion that the court erred in allowing Foard County a credit of $550.56 for back taxes collected by Hardeman County after the creation of Foard County, upon renditions previously made.   Such back taxes, as they were collectible before the creation of the new county, belonged to the parent county as a part of its current revenues.

Taking, then, the tax rolls of Foard County for 1891 as corrected and the tax rolls of Hardeman County for the same year as the basis of calculation, and accepting the court's finding of excess in the amount of the bridge bonds, we conclude that the judgment in other respects should be set aside and here rendered in favor of Hardeman County against Foard County for the latter's proportion of the courthouse and bridge bonds paid off by Hardeman County April 10, 1897, aggregating $7000, and for her proportion of the interest so paid ($3960), after deducting the amount ($993.42) paid on the bridge bonds in excess of the lawful amount; Foard County to be credited with the total amount of principal and interest already paid in excess of her proportion, this excess aggregating $1906.29, and the remainder after allowing this credit to bear lawful interest from April 10, 1897.   The judgment, according to our calculation, should be in the sum of $620.63, with interest from April

10, 1897, to collect which the commissioners court of Foard County should levy a tax, as provided by law, upon the property in the excised territory.

*Modified.*

### ON MOTION FOR REHEARING.

The fourth ground of appellee's motion for rehearing, complaining of the judgment of this court in so far as it denied Foard County a credit of $550.56 for back taxes collected by Hardeman County after the creation of Foard County, seems to be well taken. Articles 5239 to 5243 of the Revised Statutes (Acts 1885, p. 107), which were overlooked on the original hearing, make provision, where a new county is created out of a part of any one or more organized counties, for the collection by the tax collector of the new county of "the unpaid assessments, both on person and property, in that portion of the county included within the limits of the new county."

No distinction is made in these articles between delinquent and other taxes, but the collector of the new county is expressly authorized to collect "the unpaid assessments," which language is certainly broad enough to cover back taxes. The collector of the old county, upon the organization of the new, ceases to have authority to collect taxes in the excised territory. Since the law thus transfers the authority to collect from the officer of the old to that of the new county, it follows that the right to the taxes is also transferred from the old to the new county.

This ground of appellee's motion for rehearing is therefore sustained, and the judgment of the District Court, in so far as it allowed this credit, instead of being reversed, is affirmed. In other respects the motion is overruled.

*Judgment modified and affirmed.*

Tarlton, Chief Justice, did not sit in this case.

Writ of error refused.