BOESEN v. COUNTY OF POTTER.
(No. 710.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 16, 1915. Rehearing Denied
Feb. 13, 1915.)

1. COUNTIES ⚖149 — CLASSIFICATION OF
CLAIMS AGAINST BY STATUTE — CONSTITU-
TIONAL PROVISION—CHARACTER OF DEBT FOR
PRINTING DELINQUENT TAX LIST.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 1433, classifying claims against counties
into three classes, and article 1438, making a
division of the county revenue into three corres-
ponding kinds for the payment respectively of
such claims, the claim of a publisher for printing
the county delinquent tax list, to be paid as when
the taxes were collected, would be part of the
general county funds for the payment of ordina-
ry current expenses, so that Const. art. 11, § 5,
providing that no debt shall be created by any
municipality unless provision at the same time
be made for its extinguishment through a sink-
ing fund, did not apply to a contract between
the publisher and the county court for printing
the delinquent tax list.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. § 214; Dec. Dig. ⚖149.]

2. COUNTIES ⚖149—DEBT FOR PUBLISHING
DELINQUENT TAX LISTS—STATUTORY PROVI-
SION FOR EXTINCTION — CONSTITUTIONAL
LIMITATION.

Vernon's Sayles' Ann. Civ. St. 1914, art.
7687 (Rev. St. 1911, art. 7687), providing for
the publication of delinquent tax lists by coun-
ties, makes special provision for the extinc-
tion of the debt in the clause providing for an
assessment against the land of a 25-cent publi-
cation fee, so as to render valid the contract
of a county court for the publication of such
lists by complying with Const. art. 11, § 5,
providing that no municipality shall contract a
debt without making provision for its extinction.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. § 214; Dec. Dig. ⚖149.]

3. COUNTIES ⚖149—DEBT INCURRED IN PUB-
LICATION OF DELINQUENT TAX LISTS—STAT-
UTE PROVIDING FOR PAYMENT—CONSTITU-
TIONAL LIMITATION.

Where a fund for the payment of a county
debt to be contracted has been raised or provid-
ed for by statute or constitutional provision,
there is no necessity that the county court
should provide for its payment at the time of
contracting under Const. art. 11, § 5, providing
that no municipality shall contract a debt with-
out making provision for its payment.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. § 214; Dec. Dig. ⚖149.]

4. COUNTIES ⚖149—DEBT INCURRED IN PUB-
LISHING DELINQUENT TAX LISTS—CONSTI-
TUTIONAL LIMITATION.

Where statute gives precedence to tax suits
over all others, and where the betterment of the
county's finances, good faith toward the plain-
tiff, and the punctual performance of official du-
ty demanded promptness by county officials in
collecting delinquent taxes, in a suit against it
by a publisher of delinquent tax lists, payment
therefor to be made as taxes were collected, a
county cannot be heard to claim that such a debt
was not a current expense payable in the cur-
rent year, but a future debt, so that, when con-
tracted, provision should have been made for
its payment under Const. art. 11, § 5, forbidding
municipalities to contract debts without provid-
ing for payment thereof.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. § 214; Dec. Dig. ⚖149.]

5. COUNTIES ⚖149—CONTRACTS IMPLIED—IN-
VALID EXPRESS CONTRACT—PUBLICATION OF
DELINQUENT TAX LISTS.

Vernon's Sayles' Ann. Civ. St. 1914, art.
7687 (Rev. St. 1911, art. 7687), requires the
county commissioners' court to pay for the pub-
lishing of delinquent tax lists, so bringing the
debt within the exception of obligations imposed
by law to Const. art. 11, § 5, providing that no
municipality shall contract a debt unless provi-
sion is made for its payment.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. § 214; Dec. Dig. ⚖149.]

6. CONTRACTS ⚖214—IMPLIED CONDITIONS—
TIME OF PAYMENT.

Where a contract sets no time for perform-
ance and fixes no time for payment, and the
happening of the event which is to mature its
obligation as to payment depends entirely upon
the defendant, the law implies an obligation up-
on him to pay within a reasonable time.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 980–995; Dec. Dig. ⚖214.]

Appeal from District Court, Potter Coun-
ty; J. N. Browning, Judge.

Action by P. E. Boesen against the County
of Potter. Judgment of dismissal, and plain-
tiff appeals. Reversed and remanded.

Hugh L. Umphres, of Amarillo, for appel-
lant. Gustavus & Jackson and R. C. John-
son, all of Amarillo, for appellee.

HALL, J. This suit was instituted in the
district court of Potter county, by appellant,
Boesen, to recover an amount alleged to be
due him for publishing the delinquent tax
list of Potter county. Omitting the formal
allegations, his first amended original peti-
tion, upon which the case was tried, is as
follows:

"(3) Heretofore, to wit, on the 21st day of
September, 1907, the plaintiff and defendant
made and entered into the following contract
and agreement, to wit: 'September 21st, 1907.
It is ordered by the court that the proposition
of P. E. Boesen, to publish the delinquent tax
record, be accepted and spread on the minutes
of the court, as follows, to wit: "To the Mem-
bers of the Commissioners' Court of Potter
County, State of Texas—Gentlemen: Pursuant
to your request for an estimate on the cost of
the publication of the delinquent tax list of
Potter county, Texas, for the years 1885 to
1905, inclusive, a copy of which has been sub-
mitted to me, I hereby agree to publish said
delinquent list in the Weekly Herald, published
at Amarillo, Texas, for three consecutive weeks,
at 25 cents per description. Payment for pub-
lication to be made as delinquent taxes are paid
into the hands of the tax collector. As a con-
sideration of this agreement I ask that all legal
citations upon unknown or unrepresented de-
linquents be ordered published in the aforesaid
Weekly Herald. Respectfully submitted. P. E.
Boesen." It is further ordered by the court that
one copy of said delinquent tax records be de-
livered to said P. E. Boesen, editor of the Am-
arillo Weekly Herald, a weekly newspaper pub-
lished in Potter county, for publication, and
that one copy be delivered to the clerk for use
in making a delinquent tax record of Potter
county, and that one copy of said record be sent
to the state comptroller.'

"(4) Said contract set forth in paragraph 3 of
this petition was drawn by the county judge of
the defendant, Hon. Sam R. Merrill, while said
judge and the commissioners of the defendant
were holding a special term of the commissioners'

court for said defendant at the courthouse of the defendant; and while said court was in session, said order accepting the proposition of plaintiff, as the same was drawn by said county judge, was made and entered on the minutes of said court in volume 4, p. 148, and said proposition and order so spread on said minutes constitutes a contract between plaintiff and defendant.

"(5) By the terms of said contract the plaintiff became bound and liable and obligated to the defendant to publish said delinquent tax list in accordance with the contract, with the copy submitted, and with the law, within a reasonable time after said contract was so made and entered into between plaintiff and defendant, and defendant became liable and bound and obligated to plaintiff, and promised to pay him the sum of 25 cents per description for each description contained in said delinquent tax list so published, within a reasonable time after such delinquent tax list was so published and accepted by defendant.

"(6) Said delinquent tax list was promptly and within a reasonable time published by plaintiff, in accordance with the contract aforesaid, and in accordance with the copy submitted to him, and in accordance with the law, and the same, as published, was correct in all things, was acceptable to, and so accepted by, the defendant, and said delinquent tax list, as published by plaintiff, is now, and has been at all times since said publication and acceptance, the duly recorded tax list and record for defendant, for the years 1885 to 1905, inclusive. Said delinquent tax list so published by the plaintiff contained 14,800 descriptions, for the publication of which defendant, by the terms of said contract set forth in paragraph 3 hereof, promised, agreed, bound, and obligated itself to pay the plaintiff the sum of $3,700, in a reasonable time, and said sum is due and unpaid.

"(7) Upon the publication and acceptance of said delinquent tax list as aforesaid, it became and was the duty of the defendant, under the terms of said contract set forth in paragraph 3 hereof, and under the law, within a reasonable time, to cause suit to be filed in the name of the state of Texas, in the district court of the county of Potter, against the delinquents named in said list, and against the property described therein, and cause publication and citation to unknown and unrepresented delinquents, in each suit so filed, in the Weekly Herald, a newspaper published in said county and owned by plaintiff. Plaintiff is informed and verily believes, and so charges the facts to be, that at least 1,000 suits would be required and at least 1,000 citations would be published in carrying out this part of said contract by defendant, and that plaintiff would have earned thereby the sum of at least $5,000 in the publication of such citations, over and above all his expenses in publishing such citations.

"(8) Defendant has wholly failed and refused to cause suits to be filed and citations to be published as provided by the terms of said contract, and as it is alleged in paragraph 7 hereof to be the duty of defendant to do, except as to about 12 suits, to the plaintiff's damage in the sum of $5,000, which amount plaintiff claims because of the defendant's breach and violation of its contract in failing to cause such suits to be instituted and citations published, as aforesaid, and said sum is due and unpaid.

"(9) Said delinquent tax list is now in the hands of defendant, and has been ever since its said publication and acceptance, and plaintiff has no right or interest in said list, and no power under the law to enforce the collection of delinquent taxes, or the payment of said taxes to the tax collector, although he has often and repeatedly attempted to get the defendant to enforce the collection of such taxes and to pay him the sums that are due and owing him on account of the said publication of said delinquent tax list, but plaintiff has received as the proceeds of so publishing such list only the sum of $275, as he verily believes and charges to be the fact. It is now about six years since said list was published by plaintiff and accepted by defendant, and it is unreasonable for plaintiff to wait longer for defendant to perform its duties and obligations under said contract and under the law. Five years from the date of such publication and acceptance is a reasonable time in which defendant would have performed its duties and obligations under said contract, and plaintiff is entitled to interest on the sums of money due him under said contract from the time when such sums became due. Plaintiff has presented his claim to the commissioners' court of defendant for said sums, and said claim has been disallowed. Such claim is hereto attached, marked 'Exhibit A,' and made a part hereof.

"(10) Pleading in the alternative, plaintiff says that, if he should be mistaken as to his rights and duties, and those of the defendant, under the contract and under the law, as to the time and manner in which plaintiff is entitled to payment for publication of said list set forth in paragraph 5 hereof, then he alleges that at all events he is entitled to compensation as hereinbefore alleged—'payment for publication to be made as delinquent taxes are paid into the hands of the tax collector'—and for the purpose of this alternative pleading plaintiff alleges that he is informed and verily believes, and so charges the fact to be, that payment was made of delinquent taxes set forth in said list to an amount equal to the sum of $3,700, and interest on that sum at the rate of 6 per cent. per year, same being received by the tax collector and paid into the treasury of the defendant. And plaintiff says that by reason of the facts alleged in this paragraph of this pleading, defendant is due and owing plaintiff the sum of $3,700, and said interest, which it has failed and refused to pay, to plaintiff's damage in said sum.

"(11) Plaintiff, pleading in the alternative, again says, if he should be mistaken as to the rights and duties of plaintiff and defendant with respect to payment and the time and manner thereof, as alleged in paragraph 5 hereof, yet it is a fact that said list was published by the plaintiff in accordance with the copy submitted and with the law, and said list was correct in all things, was acceptable to, and accepted by, the defendant, and is now, and has been, the duly recorded delinquent tax list, and recorded ever since said publication and acceptance as alleged herein, and defendant became bound and liable and obligated to pay the plaintiff reasonable compensation for his services within a reasonable time. Reasonable compensation for such publication is $3,700, and plaintiff admits receiving $275. Reasonable time for making payment under the circumstances is five years from date of publication and acceptance by defendant. By reason of the facts alleged in this paragraph of this pleading the defendant is due and owing plaintiff $3,700, less the credit, with interest thereon as aforesaid, to plaintiff's damage in such sum.

"(12) Under any construction of the facts as alleged as a basis for this action, as set forth herein, whether on the original or alternative allegations of debt and liability of defendant to plaintiff, the plaintiff charges that upon the acceptance of said list as published by the plaintiff it became the duty of defendant, under the law, to institute and prosecute suits, and cause this to be done, against delinquents in said list, and to have enforced the collection of taxes due and owing the defendant by the delinquents. Said list was a valuable one to defendant, increasing the tax values to the amount of $3,700, the amount it was accepted by the commissioners' court, and the law made it the duty of the defendant to enforce the collection of said taxes and read into said contract the duties and obligations imposed upon each party of the contract by statute, so that the duties and obliga-

tions resting upon the county of Potter, defendant, as set forth by statute, became a part of said contract. Plaintiff relied upon the defendant carrying out its duties under the contract and under the statute, in making said contract, in carrying out his duties and obligations. He has performed all the duties and obligations resting upon him, but the defendant has breached and violated its part of said contract and duties and obligations, to plaintiff's great damage aforesaid, and which damage would not have been occasioned and sustained by plaintiff if defendant had performed its duties and obligations under the law and under said contract.

"Wherefore, premises considered, plaintiff sues and prays that on final hearing he have judgment for his debt, interest, costs of suit, and for his damages, and for such other and further relief, general and special, in law and in equity, as he may be entitled to."

### Exhibit A.

"Amarillo, Texas, August 11, 1913.

"To the Honorable Commissioners' Court of Potter County, Texas:

"On the 21st day of September, 1907, a proposition was submitted to the commissioners' court by P. E. Boesen, for the publication of delinquent tax lists for the years from 1885 to 1905 for Potter county, Tex., which proposition was accepted by said commissioners' court for said county, and therefore became a valid contract, being entered upon the minutes of said court in volume 4, p. 148.

"As a basis for the making of said contract, the commissioners' court and the individual members thereof promised and agreed that the collection of said delinquent taxes contained in said list would be speedily enforced, and that suits would be instituted promptly and the tax of 25 cents which should be taxed against each tract for every description would be collected by law or otherwise within a reasonable time.

"Said delinquent list was published by P. E. Boesen in the Weekly Herald, as required by law, publication being completed in the fall of 1907, and the work was correct, in accordance with the copy submitted to him, and according to the law, was acceptable to the county of Potter and the commissioners' court, and was approved in all things as the duly published and authorized delinquent tax list for Potter county for said years.

"The enforcement of collection of said delinquent tax list was never undertaken in such a way as to accomplish the result contemplated by the county and P. E. Boesen at the time of making such contract, and no diligence has ever been exercised by the county in the collection of such taxes, so that only a few tracts, comparatively, have been collected for, and so that P. E. Boesen has remained without his money that would have been collected for him under said contract that he would have otherwise gotten if the county had enforced the collection of such delinquent taxes, as it was the duty of the county to do under the law, and under the terms of said contract, and under the promises and agreements and representations of the commissioners' court and the individual members thereof prior to the making of the said contract aforesaid.

"P. E. Boesen says that five years is a reasonable time in which the taxes against the property named in said delinquent list could have been collected, and would have been collected, if any diligence had been exercised by the court and the officers of said county in pursuing their duties and the law, and that, on account of the failure of the county to use said diligence and to bring suits and to prosecute them to judgment against all of such delinquents, and to have the land sold under order of the court in satisfaction of said judgment, that P. E. Boesen has been damaged in the sum of $3,425, on ac-

count of printing 14,800 descriptions in said delinquent tax list, upon which he has recovered only $275, whereas he should have received 25 cents per description, and he has been damaged in said amount the sum of $201.50 per annum as interest on said amount at the rate of 6 per cent. per annum, from the expiration of five years after the date of publication of said list as aforesaid.

"As evidence of the promises and agreements of the county that suits would be instituted for the collection of said taxes, it is provided that P. E. Boesen should get the citations to publish, and it is charged that only a few suits were filed, and he lost the profits he would have made under that feature of the contract, all on account of the neglect of the county to bring and prosecute such suits as aforesaid, to his damage in the sum of $5,000.

"Said delinquent tax list is in the hands of the commissioners' court and the officers acting for said county, and is not under the control of P. E. Boesen in any manner whatever. The publication of said list caused the taxes against property in said county to be increased $3,700, to which extent said Potter county has been enriched by the publication of said list, and which amount is secured by the property listed in said delinquent tax list, at the rate of 25 cents per description; so that the county of Potter has received the benefit of the service of P. E. Boesen in the publication of said list, and have given him nothing in return, although, if the officers of said county had been diligent in the performance of their duty, as is enjoined upon them by law, and in carrying out their promises, representations, and agreements to the effect that prompt enforcement of collection of said taxes would be carried out, P. E. Boesen would have received the benefit named in said contract.

"Wherefore P. E. Boesen now here presents his claim to said county of Potter for the items of indebtedness, interest, and damages which he says is justly due and owing him on account of the neglect and failure of the commissioners' court and officers of said county that are charged with the duty of enforcing collection of delinquent taxes, in the particulars aforesaid, and he prays that this claim be allowed and the clerk of said court be ordered to pay said amounts of damage, interest, and indebtedness to said P. E. Boesen."

[1, 2] The court sustained the general demurrer to the petition, and, appellant having declined to amend, judgment was entered dismissing the case, from which this appeal is prosecuted. The very question presented here was decided in the case of Wichita Falls v. Skeen, 18 Tex. Civ. App. 632, 45 S. W. 1037, in favor of appellant's contention. Stephens, J., without discussing the matter at length, said:

"With reference to the second defense, we are of opinion that the current expense of printing delinquent tax lists, which is incidental to the exercise of the vital taxing powers of a municipal corporation, is to be regarded as an item of ordinary expenditure. McNeal v. City of Waco [89 Tex. 83] 33 S. W. 323."

If such an undertaking is an item of ordinary expenditure and a part of the current expenses of the city, it is, of course, not necessary to make special provisions for its payment under the Constitution (article 11, §§ 5, 7). Should an unusual expenditure of a considerable sum be ordered by the commissioners' court, such as would be required in the construction of an expensive jail or courthouse, a debt is created to which the consti-

tutional restriction applies; but we do not believe it was intended that the creation of a debt of this class, which may in some instances amount to a nominal sum, should be accompanied by all the ceremony and ritualism required where a drainage of the exchequer of the county is threatened. Cases may arise where the taxes upon only one tract of land are unpaid, and yet, according to appellee's contention, the commissioners' court must be called together in solemn conclave, and all the formulary of the law obeyed, before an honest debt of two bits against the county could be paid. The fact that a snug sum is involved in this litigation does not influence our opinion of what the general rule should be in such cases. In Ault v. Hill County, 102 Tex. 335, 116 S. W. 359, Williams, J., said:

"No levy of a tax was made to provide a special fund to pay the amount agreed to be paid for the improvements; the commissioners who made the contract intending to pay it out of the current revenues. Had the money been on hand, or had the prospect of collecting it out of the taxes legitimately levied for general county purposes been such as to justify a reasonable expectation that it would be on hand, to meet the payments on the contract as they fell due, we should have a question very different from that which is presented by the facts."

According to statutory classification of claims (Vernon's Sayles' Civil Statutes, art. 1433) and funds (Id. art. 1438), the publisher's fee would be, when collected, a part of the general fund of the county, and subject to the payment of general debts and current expenses. It is therefore, in our opinion, not within the purview of section 5, art. 11, of the Constitution. City of San Antonio v. Serna, 45 Tex. Civ. App. 341, 99 S. W. 875; City of San Antonio v. Tobin, 45 Tex. Civ. App. 631, 101 S. W. 269. We feel that we could safely rest a determination of this appeal upon the decision in the Wichita Falls-Skeen Case, supra; but, if it should be insisted that the current expenses are such as are necessary in the administration of the affairs of the municipality, and not specially provided for, still we think appellee's contention is unsound. Our construction of article 7687, Vernon's Sayles' Civil Statutes (R. S. 1911), is that the Legislature, in providing for the taxation of a fee of 25 cents against each tract of land advertised to pay the expense of publishing the delinquent tax list, has made this special provision.

In the McNeal Case, 89 Tex. 83, 33 S. W. 323, we find this language by Denman, J.:

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenues or other funds within their control, lawfully applicable thereto, and which would therefore, at the date of the contract, be an unprovided for liability, and properly included within the general meaning of the word 'debt.' They have no application, however, to that class of pecuniary obligations in good faith intended 'to be, and lawfully, payable out of either the current revenues for the year of the contract or any other fund within the immedi-

173 S.W.—30

ate control of the corporation. Such obligations being provided for at the time of their creation, so that in the due course of the transactions they are to be satisfied by the provisions made, it would be an unreasonable construction of the Constitution to hold them debts, within its meaning, so as to require the levy of a wholly unnecessary tax upon the citizen. * * * Payment of such claims being lawfully provided for, in such way that their satisfaction in the due course of business is reasonably certain, they are, in legal contemplation, so far satisfied as to be considered as not contemplated by the constitutional provisions, though it may result, from some cause not provided against by the law, such as a failure to collect the taxes, * * * that they are not paid from the contemplated sources."

[3] Article 7687, R. S. 1911, requires the commissioners' court to have the tax list published, and specifically provides that a publisher's fee of 25 cents, and no more, shall be taxed against each tract of land advertised, and that the fee when collected shall be paid into the county treasury. In making each fee of 25 cents a lien upon a tract of land, the Legislature has already provided a certain fund to reimburse the county for the sum paid for publishing the list. We see no necessity for the commissioners' court to make further provisions for its payment under article 11 of the Constitution. This fee of 25 cents for each tract of land "is a fund within the immediate control of the corporation." The municipality has but to collect it to make it available. Even though provision should be made for the payment of the debt under article 11 of the Constitution, the county would still be required to collect this fee. There is never any necessity for a provision for the payment of interest and a sinking fund where a fund has already been raised or provided by the Legislature or the Constitution. Berlin Iron Bridge Co. v. San Antonio, 50 S. W. 408.

In Mitchell County v. City National Bank, 91 Tex. 361, 43 S. W. 880, Judge Brown said:

"The Legislature has the power to make all such 'provision' for counties and cities, or it may leave it to the officers of such corporation to make it when the debt is created. If made by either, it is sufficient."

In that case it was held that the acts of 1881 and 1884 made such provision as the Constitution required. The language of article 7687, supra, is even more definite and specific in making "provision" than the act referred to by Judge Brown. It is further said by Judge Brown in that case:

"It was not the purpose of the (constitutional) convention, in adopting the foregoing article (11), to require that a city or county should, at the time of creating a debt, ascertain the rate per cent. required to be levied upon the taxable values of the county in order to raise a sufficient sum to pay the interest and provide a sinking fund upon that debt, and to actually levy that rate of tax at the time. Bassett v. City of El Paso, 88 Tex. 175, 30 S. W. 893. In the case cited the city of El Paso had at the time that it determined to issue its bonds, by an ordinance, provided for the collection annually of a given sum for the purpose of paying the interest which might accrue upon the said bonds, and also a given sum to be raised annu-

ally as a sinking fund. This court said: 'The language and purpose of these provisions (of the Constitution) seem to be satisfied by an order providing for the annual collection by taxation of a sufficient sum to pay the interest thereon, and create a sinking fund, etc., though it does not fix the rate or per cent. of taxation for each year by which such sum is to be collected,. but leaves the fixing of such rate for each. successive year to the commissioners' court or city council. * * * As stated above, we have not deemed it necessary to determine whether the order of August 11, 1893, actually levied a tax, as we are. of the opinion that it fully complied with the law by making provision for the collection of the interest and sinking fund by taxation.' What the Constitution requires is that provision shall be made at the time, or shall have been previously made, by which the rate of tax to be levied is so definitely fixed—as was done in the case last cited—that it becomes merely a ministerial act to determine the rate to be levied."

In the instant case the article of the statute cited above determines the rate, levies the tax, provides an absolute method for its collection, and orders it paid into the general fund of the county for the specific purpose of satisfying the identical debt sued for by the appellant. The following cases announce the same doctrine: Presidio County v. Nat'l Bank, 20 Tex. Civ. App. 511, 44 S. W. 1069; Hardeman County v. Foard County, 19 Tex. Civ. App. 212, 47 S. W. 30; Wright v. City of San Antonio, 50 S. W. 407; Berlin Bridge Co. v. City of San Antonio, supra.

[4] While we agree with the holding of Judge Stephens in the Wichita Falls-Skeen Case, supra, that this is not a debt within the meaning of the Constitution (article 11), nevertheless, if we are mistaken in such conclusion, the above-cited authorities sustain us in the position that the Legislature made the necessary "provision" when article 7687, R. S. 1911, was enacted. In the case of City of Cleburne v. Gutta Percha & R. Co., 127 S. W. 1072, the true test of the character of the debt is stated thus:

"Does it impose a burden on the revenues of the city for future years?"

Measured by that rule, our classification of appellant's claim might be erroneous were it not for the fact that the statute previously made provision for relieving the county's revenues of the burden imposed by the contract. The contract stipulates:

"Payment for publication to be made as delinquent taxes are paid into the hands of the tax collector."

Under this clause of the contract appellant's claim may or may not have matured within the current year; this depending upon the diligence of the county authorities in collecting the taxes. The statute gives tax suits precedence upon the docket of the trial court over all other litigation. The betterment of the county finances, every consideration of good faith towards appellant, as well as punctual performance of official duty, demanded prompt effort on the part of the county officials to make the collections. In view of these matters, appellee cannot be

heard to insist that it was a debt not to be paid during the current year. Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523. As was said by our Supreme Court in that case:

"We must presume that both parties knew the law. and intended to obey it. Tomlinson v. Hopkins County, 57 Tex. 575. It is a well-established rule of construction that language in a contract which is susceptible of two constructions, one of which would render the contract illegal, and the other would make it lawful, that contract (construction) which would conform the contract to the law must be adopted. Clarke on Contracts, p. 593; Evans v. Pike, 118 U. S. 241, 6 Sup. Ct. 1090, 30 L. Ed. 234; Hobbs v. McLean, 117 U. S. 576, 6 Sup. Ct. 870, 29 L. Ed. 940. The rule of construction is stated by Clarke thus: 'Where a particular word, or the contract as a whole, is susceptible of two meanings, one of which will render the contract valid, the other of which will render it invalid, the former will be adopted so as to uphold the contract. Thus, where a document was expressed to be given 'in consideration of your being in advance,' to a person, it was argued that this showed a past consideration which would not support the promise. The court held that the words 'being in advance' might mean a prospect of advance, and might be equivalent to 'in consideration of your being in advance,' or 'on consideration of your being in advance.' So also where a contract is susceptible of two constructions, one of which will render it unlawful as being in violation of law, or contrary to public policy, that construction which will render it lawful will be adopted.' "

[5] There is another class of municipal debts which by the weight of authority is not subject to the constitutional restriction, and known as obligations imposed by law. The allegations in plaintiff's amended original petition bring this case within that class. 37 L. R. A. (N. S.) 1086–1090, note. Eidson, J., in Baldwin v. Travis County, 40 Tex. Civ. App. 149, 88 S. W. 484 (writ of error denied by the Supreme Court), held that the effect of the act under consideration (article 7687) was to require the commissioners' court to pay for publishing the delinquent tax list. Dwyer v. City of Brenham, 65 Tex. 527, is cited as an illustration of this rule. That was a suit for compensation for printing and binding the ordinances of the city. The city demurred to the petition upon two grounds, viz.: (1) That the contract was ultra vires; and (2) that no provision had been made as required by law for its payment. The charter of the city contained this provision:

"All ordinances of the city when printed and published by authority of the city council shall be admitted and received in all courts and in all places without further proof."

The court sustained the defendant's demurrer and dismissed the petition.

Robertson, A. J., said (referring to the section of the ordinances above quoted):

"This section contemplates the printing of the ordinances. The charter does not intend that the city shall own a printing establishment, and the Legislature never expected the printing to be done without compensation, pro bono publico. The power to make a contract to pay for the printing was therefore necessarily implied. If the city needed printed copies of

the charter, the occasion for them in the accomplishment of its corporate purposes raised an implication of the power to have them printed. Dillon on Munic. Corp. § 89. The debt contracted for, under the allegations of the petition, was in the nature of current expense, and not such debt as that contemplated in section 5, art. 11, of the Constitution. * * * The demurrer to the petition was improperly sustained, and the judgment dismissing the suit must be reversed, and the cause remanded."

Having held, as we do, that appellant was entitled to recover upon the contract as declared upon by him, it is unnecessary for us to decide the further question presented, which is his right to recover upon an implied contract. We, however, incline to the opinion that, if his right to recover upon the contract should for any reason be denied, he should nevertheless be entitled to a judgment for the amount due him upon an implied assumpsit. "In the case of City of Bryan v. Page [51 Tex. 532, 32 Am. Rep. 637], it was held that the city could not be required to pay for what it had received and made use of, where it had not been contracted for in the manner prescribed. This rule was modified in City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440 [26 Am. St. Rep. 763], and the city was held to pay for benefits actually received by it." Penn v. City of Laredo, 26 S. W. 636. The charter of the city of San Antonio required the exercise of the power of contracting with any one and the act of fixing his compensation for the collection of delinquent taxes due the city to be done by ordinance. No ordinance was enacted, but, in accordance with a resolution passed by the city council, the mayor contracted with one Brand to collect the delinquent tax, and agreed to pay him for his services 5 per cent. of all amounts so collected. Neill, A. J., denied Brand's right to recover upon the contract, but held the city bound to pay the reasonable value of the services rendered, of which it had knowingly received the benefit. Brand v. City of San Antonio, 37 S. W. 340.

In City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763, the matter under consideration was the liability of the city to pay rent for certain rooms in a building leased for the use of the city for one year. Judge Gaines, delivering the opinion of the court, said:

"It may be that when a municipal corporation has received the benefit of a contract, which it had the power to make, but which was not legally entered into, it may be compelled to do justice, and to pay the consideration, or at least to pay for what it has received. In such cases it is said that the law will imply a contract; but we think it contrary to sound principles to imply a contract in any other case. As said by Mr. Justice Field, in the case of Gas Co. v. San Francisco, 9 Cal. 453: 'When the contract is executory, a corporation cannot be held bound unless the contract is made in pursuance of the provisions of its charter; but where the contract is executed, and the corporation has enjoyed the benefit of the consideration, an implied assumpsit arises against it.' "

As further sustaining the liability of a municipality upon implied contracts, we refer to the editorial notes in 27 L. R. A. (N. S.) 1117, 1125, and the supplemental notes in 39 L. R. A. (N. S.) pages 43, 72; 2 Dillon's Munic. Corp. (5th Ed.) §§ 793, 794.

[6] Appellant's third assignment of error urges the proposition that when a contract shows an uncertain time for performance thereof or fixes no time for payment thereunder, and the happening of the event which would mature payment depends entirely upon the defendant, the law matures the contract within a reasonable time. We think this proposition is sound. As expressed in 2 Elliott on Contracts, § 1628:

"It is said that the law enters as a silent factor into every contract. That which is implied by law becomes a part of the written contract the same in general as if it were written therein, and, if the contract is thus made clear and complete, it can no more be varied or contradicted by parol evidence as to the matter imported into it by law than it can in any other respect. This doctrine is frequently applied where a contract is silent as to the time of performance. The general rule in such cases is that it must be performed within a reasonable time, and that this implication of law cannot be varied by parol evidence, although such evidence may be admissible to show what is a reasonable time." Id. § 3713; Self v. King, 28 Tex. 552; Hart v. Bullion, 48 Tex. 552; Andrae v. Watson, 73 S. W. 991; Weaver v. Starnes, 98 S. W. 902; Dunham v. Orange Lumber Co., 125 S. W. 89; Bush v. Merrill, 156 S. W. 606; Pollard v. Allen, 171 S. W. 530, decided by this court and not yet officially published.

We think the court was correct in sustaining defendant's exception No. 2 to the fourth paragraph of plaintiff's amended petition, exception No. 6 to the seventh paragraph, exception No. 7 to the eighth paragraph, exception No. 11 to the twelfth paragraph, exception No. 12 to the twelfth paragraph, and exception No. 13 to the twelfth paragraph. The general demurrer and the remaining special exceptions should not have been sustained, and, because of the court's action in so doing, the judgment is reversed, and the cause remanded.