CITY OF WICHITA FALLS v. SKEEN & SMITH.

Delivered April 30, 1898.

**1. Contract Illegal, When—Conspiracy to Prevent Competitive Bidding.**

An agreement made between newspaper publishers to prevent competition between them in bidding for the contract for public county printing renders the contract for such printing thereupon secured by one of them illegal and void.

**2. County—Expense of Printing Delinquent Tax List.**

The current expense of printing delinquent tax lists is an item of ordinary municipal expenditure, and it is not requisite that provision should be made for the payment of such a debt at the time of its creation.

APPEAL from the County Court of Wichita. Tried below before Hon. R. COBB, Special Judge.

*Charles C. Huff, J. H. Barwise, Jr.,* and *R. E. Huff,* for appellant.

*J. J. Ofiel, L. H. Mathis,* and *Carrigan & Montgomery,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellees, publishers of the Wichita Times, a weekly newspaper published in Wichita Falls, recovered judgment against appellant in the sum of $235, besides interest and costs, for publishing during the year 1896 the delinquent tax list of Wichita Falls for the preceding year.

They declared upon a contract with the city council of Wichita Falls, which fixed the price for the publication at 25 cents for each tract or lot of land contained in the delinquent list so published, the petition alleging, among other things, "that said contract was entered into after bids for such publication had been advertised for and received by defendant, and defendant made said contract with plaintiffs because, among other considerations, plaintiffs' bid for said work, of 25 cents per tract, was as low as the bid of any other newspaper publisher bidding," etc.

Two special defenses were interposed to the action; one an unlawful combination entered into by appellees and the other newspaper publishers of Wichita Falls, in pursuance of which all the bids had been made at the maximum price of 25 cents per tract; the other, that no provision was made for paying this debt at the time of its creation.

In support of the former, the following testimony was introduced: "The witness Ed Howard, being sworn, testified as follows: I am one of the firm of Daugherty & Howard, publishers of the Wichita Herald; was when the contract was made with the city of Wichita Falls for the printing of the tax list of 1895. On or about September 1, 1896, and prior to any contract made with the defendant, and prior to the performance of any service for the city which is sued for herein, my partner Daugherty and myself had entered into an agreement with Skeen & Smith, publishers of the Wichita Times, and with J. F. Lockney, publisher of the Warrior, by the terms of which we agreed that none of us would submit a bid for publishing the delinquent tax list of 1895 except at the agreed

price of 25 cents per tract. This agreement was secret, and was not intended to be known by the public. We had further agreed among ourselves not to do any county printing except at a specified and fixed rate, nor to publish any candidates' announcements except at a specified and fixed rate. These agreements were all secret, and were entered into by us for the purpose of holding up the rates for this character of printing, and for preventing competition among ourselves. In pursuance of our agreement, we all submitted bids for publishing the city tax list of Wichita Falls for the year 1895, at 25 cents per tract. All our bids were apparently secret, but really in concert, and each newspaper submitted separate bids. Under our agreement the paper whose bid was accepted, or which did the publishing, was to receive one-half of the proceeds, and the other papers were to receive one-fourth each. At that time the papers named were all of the papers in Wichita Falls, Texas."

Witness Lockney corroborated, but both the appellees contradicted, this testimony.

Upon the latter defense no evidence was offered.

The court instructed a verdict for appellees, and to this action error is assigned.

We are of opinion that the controverted issue of fact involved in the first special defense should have been submitted to the jury. It is quite clear, we think, that if appellees obtained the contract declared on by the means disclosed in the testimony quoted above, they should not be allowed to recover thereon. Such combinations are treated as analogous in their nature and effect to those affecting or tending to affect competition at execution and other sales at public auction. Throop on Pub. Off., sec. 63.

In speaking of the latter, Mr. Freeman, in his work on Executions, volume 2, section 297, uses this language: "Execution sales are required to be made at public auction, and after due notice, in order that competition may be produced, and the property of the debtor be sold at its market value. Anything which tends to prevent this competition is likely to produce a sacrifice of the interests of the debtor, and perhaps of both debtor and creditor. It is also against public policy, and highly immoral, and whenever discovered will be stamped with marks of disapproval, both at law and in equity. Any agreement made between two or more persons to avoid or reduce competition at an execution or judicial sale is treated as fraudulent and void. If either of the parties appeals to a court of law to enforce rights based upon or growing out of such agreement, the appeal will be disregarded. The law will not assist him to harvest the anticipated fruits of his immoral and unlawful compact."

This language applies with equal, if not greater, force to contracts for public employment which are let to the lowest bidder, and especially so where the number of bidders is, as in this instance, limited to the few newspaper publishers of a single county.

With reference to the second defense, we are of opinion that the current expense of printing delinquent tax lists, which is incidental to the

exercise of the vital taxing power of a municipal corporation, is to be regarded as an item of ordinary expenditure.   McNeill v. City of Waco, 33 S. W. Rep., 323.

Because the court refused to submit to the jury the issue involved in the first special defense, upon which the evidence was conflicting, the judgment is reversed and the cause remanded for new trial.

*Reversed and remanded.*