STATE OF NEW JERSEY, PLAINTIFF-APPELLANT-RE-SPONDENT, v. JOSEPH LA FERA, SR., WILBUR W. BLAUVELT, RICHARD N. DINALLO, ANTHONY P. MIELE AND PHILLIP R. SALVATORE, DEFENDANTS-RESPOND-ENTS-APPELLANTS.

Argued March 21, 1961—Decided May 22, 1961.

*Mr. Burrell Ives Humphreys* argued the cause for plaintiff-appellant, cross-respondent (*Mr. David D. Furman,* Attorney General, *Mr. John J. Bergin* and *Mr. Evan William Jahos,* attorneys).

*Mr. Walter D. Van Riper* (*Messrs. Van Riper and Belmont,* attorneys), *Mr. Albert G. Besser, Mr. John W. McGeehan, Jr., Mr. William A. Wachenfeld,* and *Mr. John J. Breslin* argued the cause for defendants-respondents, cross-appellants.

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendants moved to dismiss the indictment returned against them and the State moved to amend. The trial court refused to dismiss but required the State to elect to proceed upon one of the two counts the indictment contains. The State's motion to amend was denied in part. The Appellate Division granted all parties leave to appeal and we certified the appeals before the Appellate Division considered them.

The indictment is for conspiracy in violation of *N. J. S.* 2*A*:98–1. The first count is based upon subsection "h" which denounces a conspiracy to commit an act for the perversion or obstruction of "the due administration of the laws." ·The statute, the due administration of which is charged to be the subject of the conspiracy, is *R. S.* 58:14–22.

It requires the Passaic Valley Sewerage Commission to resort to competitive bidding with respect to work or materials involving an expenditure in excess of $2,000. Pursuant to that act the Commissioners called for bids. The charge is that the five named defendants agreed in advance as to which of the companies they represented would bid and in what amounts. The second count alleges a conspiracy to obtain moneys by false pretenses in violation of subsection "f" of *N. J. S.* 2*A*:98–1, the false pretense being that the bids submitted were "competitive bids" whereas in fact they were the product of the agreement to submit bids which the defendants had collectively prearranged.

Each count alleges the same overt acts. In essence they aver the submission by George Brewster & Son, Inc., of bids of $4,998,450 and $5,024,450 upon specified alternate bases and the submission by Terminal Construction Corp. of bids in the respective amounts of $5,125,180 and $5,130,180; that an award was made to the Brewster company which then assigned the contract to a certain joint venture using the trade name of Geo. M. Brewster & Son, Inc.—Constructors; that under the assignment the Brewster company retained a 25% interest with a like interest going to La Fera Contracting Co., Inc., and the remaining 50% interest going to Joseph Miele Construction Co., Inc., and C. Salvatore & Sons, a partnership; and that the assignment was closely followed by the execution of an agreement between the joint venture and Terminal Construction Corp. whereby Terminal acquired a 30% interest in the basic contract. Thus Brewster, the successful bidder, remained with a 25% interest, further reduced by the overall 30% interest of Terminal, the other company which had submitted a bid in furtherance of the alleged conspiracy.

The two counts actually charge but a single conspiracy, the ultimate object of which was to obtain the contract under the guise of competitive bidding, thereby to receive more money than might be paid under a contract ensuing from true competition.

## I.

It is well preliminarily to restate the principles by which a challenge to the adequacy of a criminal charge must be measured.

A charge must sufficiently identify the criminal event to enable the accused (1) to defend and (2) to defeat a subsequent prosecution for the same offense. *State on Complaint of Bruneel v. Bruneel,* 14 *N. J.* 53, 60 (1953). This is so with respect to every mode of charging a crime whether by accusation or indictment, by reason of the demands of due process of law and the guarantee against multiple exposure for the same offense. The constitutional right to indictment adds another, distinctive safeguard, to wit, that no man shall be brought to trial for crime unless a grand jury shall first find sufficient cause for the charge. *State v. DiPaolo,* 34 *N. J.* 279, 285 (1961); *State v. Williamson,* 31 *N. J.* 16, 18 (1959) (concurring opinion). Hence the indictment must allege all the essential facts of the crime, lest an accused be brought to trial for an offense the grand jury did not find. The provision of *R. R.* 3:4–3(a) that an indictment or accusation shall contain "the essential facts constituting the offense charged" reflects, so far as indictments are concerned, the mandate of the constitutional right to indictment, as does also the provision of *R. R.* 3:4–5 that an amendment may not "charge another or different offense." *State v. Grothmann,* 13 *N. J.* 90 (1953).

Pleading is never an end in itself. It is merely the vehicle for the merits of a controversy. The vehicle is sufficient if it informs with fairness, and in the case of an indictment the critical criteria are those we have just outlined. If an indictment satisfied those demands, the charge is sufficiently stated. An indictment should not be dismissed unless its insufficiency is palpable. *State v. Weleck,* 10 *N. J.* 355, 364 (1952).

## A.

■ As we have said, the indictment charges defendants conspired to prevent and obstruct the due administration of the bidding statute, *R. S.* 58:14–22. That statute requires advertisement and provides the proposals received at the designated time and place "shall be publicly opened," and the contract awarded "to the lowest responsible bidder." The purpose of the statute is plain enough—to obtain the lowest responsible bid which uninhibited competition can produce. "The purpose is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders * * *." *Hillside Tp., Union County v. Sternin,* 25 *N. J.* 317, 322 (1957).

The nub of defendants' position is that a conspiracy cannot subvert the bidding statute unless it reduces the number of bids which would have been submitted. Upon that premise, defendants say a combination of persons to bid as a unit is not necessarily invidious since it may be that none would have bid for want of resources or for fear of overwhelming loss. Hence, it is argued, a mere agreement to unite is consistent with innocence, and thus no crime is charged unless there is alleged a purpose to induce a member of the combination to refrain from submitting a bid he had planned to make.

■ The error of the argument resides in the assumption that the object of a bidding statute may be defeated only by the removal of a potential bidder. Quite obviously that is but one way to interfere. Still another is the creation of the pretense of competition where in fact there is none. The thesis of the bidding statute is that competition will reveal the fair value of the work and thus guide the public agency to a decision whether to make an award or to readvertise. Collusive bids cloak the lowest among them with a robe of reasonableness, likely and indeed calculated to induce the public body to accept a bid in excess of its own estimate.

The natural tendency of an agreement of ostensible competitors to submit predetermined bids is thus to deceive and to subvert the administration of a bidding statute, and an agreement to that end is itself illegal whether it succeeds or fails and whether it does or does not influence the decision to award. 6 *Corbin, Contracts* § 1468, *p.* 849 (1951); 43 *Am. Jur., Public Works and Contracts* § 33, *p.* 774; *Mc-Mullen v. Hoffman,* 174 *U. S.* 639, 19 *S. Ct.* 839, 43 *L. Ed.* 1117 (1899); *United States v. Amster,* 273 *F.* 532 (*D. C. E. D. N. Y.* 1921); *Morgan v. Gove,* 206 *Cal.* 627, 275 *P.* 415, 62 *A. L. R.* 219 (*Sup. Ct.* 1929); *People v. Strauch,* 240 *Ill.* 60, 88 *N. E.* 155 (*Sup. Ct.* 1909); *Atcheson v. Mallon,* 43 *N. Y.* 147 (*Ct. App.* 1870); *City of Wichita Falls v. Skeen,* 18 *Tex. Civ. App.* 632, 45 *S. W.* 1037 (*Civ. App.* 1898); *Kimball Elevator Co. v. Elevator Supplies Co.,* 2 *Utah 2d* 289, 272 *P. 2d* 583 (*Sup. Ct.* 1954); see *Gulick v. Ward,* 10 *N. J. L.* 87, 93 (*Sup. Ct.* 1828); *Houston v. United States,* 217 *F.* 852 (9 *Cir.* 1914), *certiorari* denied 238 *U. S.* 613, 35 *S. Ct.* 284, 59 *L. Ed.* 1490 (1915); *People v. Olson,* 15 *N. Y. S.* 778 (*Super. Ct.* 1891).

■ Such agreements are condemned by *N. J. S.* 2A:98–1. The indictment here alleges a conspiracy of that stamp. It does not charge merely that a group united to submit a single bid. Rather it charges defendants agreed "in advance of bidding on said contract [to be awarded by the public agency] which *companies* represented by them would bid on said contract, and in what *amounts.*" The words we have italicized are plural. Hence there is charged an agreement to submit a number of bids in amounts upon which all had agreed, a course which, as we have said, involves the pretense of competition. The indictment then under "Overt Acts" alleges that "in execution of the aforesaid conspiracy and to effect the objects thereof," both the Brewster company and the Terminal company submitted separate sets of bids in the amounts noted earlier in this opinion. The indictment accordingly charges a crime within the purview of the cited statute.

## B.

■ The statute requires competitive bidding if the expenditure exceeds $2,000. Defendants say the indictment fails to allege the work involved an expenditure in excess of that sum and hence is fatally defective. We pass the question whether it would matter if the public agency were not required by law to let out contracts by competitive bidding and the further question whether an allegation of the statutory amount is in any event essential where, as here, the defendants are not public officials charged with a violation of a statutory duty. For present purposes, we will assume the necessity of the allegation defendants say is missing.

· The "charging" portion of the indictment is silent as to the amount involved, but the overt acts explicitly reveal the bids and the contract awarded were in the neighborhood of $5,000,000. Hence we are assured the grand jury found the expenditure exceeded the statutory figure. We would appear absurd if we failed to note that obvious finding, but defendants say we must ignore it in obedience to the proposition that the charging portion of an indictment may not be aided by the allegations of overt acts.

A rule of law can be no more vital than the reason of which it is made. The constitutional principles relating to the sufficiency of an indictment being thoroughly satisfied by the disclosure of the amount in the overt acts, we must ask what difference the *situs* of the disclosure should make.

Authority will be found for the general proposition that an insufficient allegation of the conspiracy in the charging portion cannot be aided by the allegations of overt acts. 15 *C. J. S. Conspiracy* § 82, *p.* 1115. A case much cited in this connection is *United States v. Britton,* 108 *U. S.* 199, 205, 2 *S. Ct.* 531, 27 *L. Ed.* 698, 700 (1883). That case in turn relied upon *Commonwealth v. Shedd,* 7 *Cush.* 514, 61 *Mass.* 514 (*Sup. Jud. Ct.* 1851), wherein one finds a statement of the rationale. The thesis is that the conspiracy being the gist of the crime, the overt acts are only matters

of aggravation which need not be proved. Hence, *Shedd* says, upon a motion in arrest of judgment it cannot be known whether the jury convicted merely upon finding the inadequate allegations of the charging portion. *Britton* deemed the thesis to be equally apt under a statute which requires proof of an overt act (as does *N. J. S.* 2A:98–2 with respect to the conspiracy charged in the present case), saying that the statutory requirement "merely affords a *locus penitentiae,* so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute." [108 *U. S.* 199, 2 *S. Ct.* 534]

The only decision in our State which seems at all pertinent is *State v. Rickey,* 9 *N. J. L.* 293 (*Sup. Ct.* 1827). The opinion of Justice Ford may perhaps be read to reflect that rule of pleading. The opinion of Justice Drake, if it concurs, nonetheless adds that "where the object stated is innocent, or ambiguous, perhaps we may look into the acts stated, to see if the uncertainty in the direct averment of the purpose is removed, and if any thing can there be discovered in the acts or purpose, of a character decidedly criminal" (*p.* 312). In federal cases since *Britton* overt acts were deemed to clarify the charging portion. See *Dealy v. United States,* 152 *U. S.* 539, 14 *S. Ct.* 680, 38 *L. Ed.* 545 (1894); *Phipps v. United States,* 251 *F.* 879 (4 *Cir.* 1918); *Anderson v. United States,* 273 *F.* 20 (8 *Cir.*), *certiorari* denied 257 *U. S.* 647, 42 *S. Ct.* 56, 66 *L. Ed.* 415 (1921); *United States v. Carter & Co.,* 56 *F. Supp.* 311 (*D. C. W. D. Ky.* 1944). And overt acts have been relied upon to establish jurisdiction and venue for trial, as we shall later point out.

We see no reason for an inexorable rule proscribing resort to the overt acts. The ultimate question must be whether the indictment on its face reveals a sufficient finding by the grand jury of the illegal combination. If it does, it would be a triumph of form over sense to refuse to read what is there. The problem which troubled the court in *Shedd,*

that a conviction might be returned upon a finding of only the inadequate charging portion, is readily obviated by an instruction to the jury of the total findings required for conviction.

At any rate, in the indictment before us the charging portion is clear with respect to the purpose and means of the alleged conspirators. The shortcoming here claimed relates solely to the question whether the public body was required by law to seek bids. We can think of no consideration of fairness which should blind us to the grand jury's finding that the expenditure involved was a sum vastly in excess of $2,000.

### C.

The indictment charges defendants agreed "in advance of bidding on said contract which companies *represented* by them would bid on said contract, and in what amounts" (emphasis added). Defendants contend the charge is deficient because it does not aver defendants had the authority to commit their respective companies to the bidding program.

The argument assumes that each defendant is charged with criminal culpability for his acts "in a representative capacity." The assumption is incorrect. Defendants are not charged with the violation of a statute prohibiting certain acts by officers of corporations. Rather they are charged with a conspiratorial agreement made by them as individuals. The unarticulated premise of the argument seems to be that a conspiracy is not indictable unless the accuseds had the capacity to succeed in their plan.

The gist of the offense is the criminal agreement. The statute, as we have said, also requires proof of an overt act, but it does not rest criminal liability upon a successful execution of the plan. Liability is complete upon the making of the agreement and an overt act in furtherance of it, whether the plan falters or prevails. *State v. Hemmendinger*, 100 *N. J. L.* 234 (*Sup. Ct.* 1924), affirmed 101 *N. J. L.* 417 (*E. & A.* 1925); *State v. Lustberg*, 11 *N. J.*

*Misc.* 51, 164 *A.* 703 (*Sup. Ct.* 1933); *State v. Harris,* 10 *N. J. Misc.* 236, 158 *A.* 848 (*Sup. Ct.* 1932); *State v. Herbert,* 92 *N. J. L.* 341 (*Sup. Ct.* 1918); 1 *Wharton, Criminal Law and Procedure* § 87, *p.* 189 (1957).

We see no meaningful distinction between failure due to a weakness in the original design and failure due to some supervening event. We are not concerned with the academic question whether there can be a conspiracy to accomplish the impossible, as for example a plot born of superstition to murder by hanging an effigy. The plan here charged had no such natural barrier. Lack of present capacity to succeed may bear evidentially upon the question whether a plot was hatched, but if it was made, it was criminal even though ability to succeed had yet to be obtained by the conspirators. We add the indictment alleges the successful execution of the conspiracy, but the complete answer to the point advanced is that capacity for success is not an issue in the case. Success itself is an aggravating fact.

## D.

Next, defendants argue the indictment "does not allege defendants conspired to obstruct or pervert execution of any specific act or duty" prescribed by the bidding statute. They say there is no charge they conspired to prevent the members of the public agency from complying with the terms of the statute.

The thrust of the argument appears to be that there cannot be a conspiracy unless a member of the public body is a party to it or unless the plan is designed in some mechanical way to prevent the public body from following the statutory steps as such. Otherwise expressed, the point apparently is that a conspiracy to defeat the *objective* of a law is not denounced by the criminal statute.

Surely under the statutory interdiction of a conspiracy to commit "an act for the perversion or obstruction of justice or the due administration of the laws," it could not be maintained that a perversion or obstruction of "justice" requires

complicity on the part of a judge or a juror or a plan to prevent the entry of a judgment or the rendition of a verdict. Rather the statute condemns also a conspiracy to commit an act which interferes with the goal or aim of the judicial process. So, too, under the companion language, "the due administration of the laws," the perversion or obstruction is equally evident if the act denies to the public the benefit or protection which the law was enacted to give. As we have already said, the bidding statute is intended to enable government to ascertain the lowest responsible bid which competition will yield, and a conspiracy to defeat that objective by collusive bids is within the conspiracy statute even though officialdom on its part is able to adhere and does adhere meticulously to the letter demands of the statute it administers. As stated in *State v. Shipley*, 10 *N. J. Super.* 245, 252 (*App. Div.* 1950), a conspiracy which "perverts or turns from its true end or purpose the administration" of a law (there the election laws) is within the statutory offense. This view of the conspiracy statute was expressed long ago. *Moschell v. State*, 53 *N. J. L.* 498, 501 (*Sup. Ct.* 1891), affirmed 54 *N. J. L.* 390 (*E. & A.* 1892). For cases in which the statute was invoked although there was neither official complicity nor an interference in any physical sense with the full performance by the official of his duty, see *State v. Dixon*, 133 *N. J. L.* 348 (*Sup. Ct.* 1945); *State v. Hemmendinger*, 100 *N. J. L.* 234 (*Sup. Ct.* 1924), affirmed 101 *N. J. L.* 417 (*E. & A.* 1925); *State v. Herbert*, 92 *N. J. L.* 341 (*Sup. Ct.* 1918); *State v. McDevitt*, 84 *N. J. L.* 11 (*Sup. Ct.* 1913), affirmed 85 *N. J. L.* 731 (*E. & A.* 1914); *State v. Reiners*, 80 *N. J. L.* 196 (*Sup. Ct.* 1910); *State v. Nugent*, 77 *N. J. L.* 84 (*Sup. Ct.* 1908).

## E.

Next, defendants contend the indictment is fatally deficient because it does not allege the place the crime was committed, and further that the trial court erred in per-

mitting an amendment in that regard. We think the indictment was sufficient in its original form.

 The indictment does not state where the conspiratorial agreement was made, nor does it allege in general terms that the crime occurred in New Jersey. But both the charging portion and the overt acts clearly reveal an agreement to accomplish an illegal result in this State in subversion of one of its laws. Thus the charging portion states the plan was addressed to the award by the Passaic Valley Sewerage Commissioners of a contract described as "Contract 355, Newark Bay Sedimentation Basin Improvements and Sludge Handling Facilities," which was followed by overt acts including the submission of the bids at the offices of the commissioners in the City of Newark.

 It is stated as a general rule that a conspiracy may be punished at the place of the illegal agreement or at the place where an overt act is committed in furtherance of it. 11 *Am. Jur., Conspiracy* § 23, *p.* 559; 15 *C. J. S. Conspiracy* § 83, *p.* 1116; *State v. Nugent*, 77 *N. J. L.* 84 (*Sup. Ct.* 1908); *Hyde v. United States*, 225 *U. S.* 347, 32 *S. Ct.* 793, 56 *L. Ed.* 1114 (1912); *Brown v. Elliott*, 225 *U. S.* 392, 32 *S. Ct.* 812, 56 *L. Ed.* 1136 (1912). The rationalization is that the agreement is renewed at the place the overt act is committed. Doubtless it is fictional to say conspirators renew their agreement at each such event, but the result is commanded by realities. Frequently there is no direct evidence of the conspiratorial agreement and hence the place cannot be shown. Further, it would be intolerable if a group of men could lay plans to execute a nefarious scheme in some distant jurisdiction, in the hope that the state where the scheme was devised will be little excited to act.

It is suggested that a distinction be drawn between the *jurisdiction* of the sovereign to punish and the *venue* of a prosecution within that sovereign's borders. But the policy considerations mentioned above equally obtain when the issue appears in jurisdictional terms. Some doubt may perhaps

arise if the overt act is negligible in character, see *Noyes v. State,* 41 *N. J. L.* 418 (*Sup. Ct.* 1879), affirmed 43 *N. J. L.* 672 (*E. & A.* 1881) ; dissenting opinions in *Hyde* and *Brown, supra,* but where a conspiracy is formed in one jurisdiction to achieve an illegal purpose in another, there is no reason to deny the latter jurisdiction the power to prosecute on the basis of an overt act there. This view is well supported. *Ford v. United States,* 273 *U. S.* 593, 47 *S. Ct.* 531, 71 *L. Ed.* 793 (1927) ; *Woitte v. United States,* 19 *F.* 2d 506 (9 *Cir.*), *certiorari* denied 275 *U. S.* 545, 48 *S. Ct.* 84, 72 *L. Ed.* 417 (1927) ; *People v. Blumenberg,* 271 *Ill.* 180, 110 *N. E.* 788 (*Sup. Ct.* 1915) ; *State v. Davis,* 203 *N. C.* 13, 164 *S. E.* 737 (*Sup. Ct.*), *certiorari* denied 287 *U. S.* 649, 53 *S. Ct.* 95, 77 *L. Ed.* 561 (1932) ; *State v. Hicks,* 233 *N. C.* 511, 64 *S. E.* 2d 871 (*Sup. Ct.*), *certiorari* denied 342 *U. S.* 831, 72 *S. Ct.* 56, 96 *L. Ed.* 629 (1951) ; *State v. McAdams,* 167 *S. C.* 405, 166 *S. E.* 405 (*Sup. Ct.* 1932).

Hence, since here the alleged purpose of the conspiracy was to subvert and obstruct a law of our State by conduct within the State, it is of no moment where the agreement was made. Overt acts within the State being alleged, jurisdiction to deal with the alleged offense amply appears on the face of the indictment. *Pope v. United States,* 289 *F.* 312, 314 (3 *Cir.*), *certiorari* denied 263 *U. S.* 703, 44 *S. Ct.* 33, 68 *L. Ed.* 515 (1923).

Defendant raises other points which we need not consider because they either are necessarily disposed of by what we have already said or are academic in that light. This brings us to the State's cross-appeal.

## II.

As we have said, the first count charges a corrupt agreement for collusive bidding and the second charges a conspiracy to obtain moneys on the false pretense that the bids submitted were competitive. If the purposes thus charged were in fact distinct, yet, they being the aims of a single conspiratorial agreement, there would be but one offense.

*State v. Continental Purchasing Co.,* 119 *N. J. L.* 257 (*Sup. Ct.*), affirmed 121 *N. J. L.* 76 (*E. & A.* 1938); *State v. Profita,* 114 *N. J. L.* 334 (*E. & A.* 1935). Here in fact there is but a single ultimate object, to wit, to obtain the contract and the proceeds it would yield by collusive bidding. See *State v. Spence,* 36 *N. J. Super.* 314 (*App. Div.*), certification denied 19 *N. J.* 441 (1955).

An offense may not be split into a number of crimes, *State v. Pennsylvania R. R. Co.,* 9 *N. J.* 194 (1952), and if defendants feared multiple convictions for a single wrong, they could seek a protective order adjudging that the total allegations of the indictment charge but one offense. *State v. Howley,* 30 *N. J. Super.* 507 (*App. Div.* 1954). Such should be the order in the present case. The trial court, however, for the reason we shall presently state, held the State must elect to proceed on one count, the other to be dismissed "once the defendants are put in actual jeopardy." [61 *N. J. Super.* 489.]

It has long been settled that a single offense may be charged in several counts to meet various turns the proof may take at the trial and that a single act or transaction may be charged in several counts where a number of criminal statutes may reach it. *State v. Bolitho,* 103 *N. J. L.* 246, 262 (*Sup. Ct.*), affirmed 104 *N. J. L.* 446 (*E. & A.* 1927); *State v. Hill,* 73 *N. J. L.* 77 (*Sup. Ct.* 1906), affirmed 74 *N. J. L.* 689 (*E. & A.* 1907); *State v. Gleitsmann,* 54 *N. J. Super.* 355 (*App. Div.* 1959); *State v. Mussikee,* 101 *N. J. L.* 268 (*Sup. Ct.* 1925); 5 *Wharton, Criminal Law and Procedure* § 1938, *pp.* 44–45 (1957). Even inconsistent or repugnant charges arising out of the same affair may be joined, as for example, larceny and receiving stolen goods. *State v. Verona,* 93 *N. J. L.* 389 (*E. & A.* 1919); *State v. Braunstein,* 84 *N. J. L.* 765 (*E. & A.* 1913). In such cases the State may not be required to elect either before or at trial, although of course the trial court may not send to the jury a charge which has no support in the evidence.

The doctrine of election is now subsumed by our rules of court relating to the joinder and severance of charges. Under *R. R.* 3:4–7 and 3:5–6 two or more offenses may be joined in the same indictment or be tried together if in separate indictments, if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." If a defendant or the State is prejudiced by the joinder, "the court, in its discretion, may order an election or separate trials of counts * * * or provide whatever other relief justice requires." *R. R.* 3:5–7; see *State v. Manney*, 26 *N. J.* 362 (1958). Recently we directed a common trial of separate indictments charging misconduct in office and extortion arising out of the same transaction. *State v. Begyn*, 34 *N. J.* 35, 56 (1961). A single transaction being here involved, there is no basis for an election or severance unless prejudice can be demonstrated.

The lone circumstance claimed to support the order is this: The first count charges that all five named defendants agreed in advance of bidding as to which companies would bid and in what amounts. The second count charges the same five defendants conspired to obtain money by the false pretense that the bids "were competitive bids, knowing such bids were not in fact competitive bids, but were the result of [here appear the names of only *four* of the defendants] agreeing in advance of the submission of such bids which company or companies represented by them would bid on such contract, and in what amounts." Thus whereas in the first count all five are directly charged with making the agreement to fix the amount of the bids, yet in the factual extension of the allegation in the second count that the bids were not competitive, the pleader omitted the name of one defendant. When the trial court stated an election would be required, the State moved to amend by adding the name of that defendant at the point where it did not appear, but the motion was denied.

We think it clear the omission of the name was inadvertent. When the making of the illegal agreement was charged in the first count, that defendant was affirmatively named—indeed without that charge he could not have been accused. The second count merely restated the same conspiracy, casting the objective in terms of the purpose of obtaining money, which obviously was the ultimate purpose of the conspiracy already charged in the first count. All five defendants are named as parties to the illegal agreement in the second count. The omission thereafter of the one name at the point we have described could not have been intentional. To add it by amendment is not to introduce a finding the grand jury did not make, for the grand jury had already made that finding in affirmative terms. The amendment therefore should have been allowed. Actually the allegations of the second count are unnecessary, since they merely restate the objective of the conspiracy in different terms. The order under review could, however, lead to confusion at the trial and hence it must be reversed with directions to permit the amendment and to treat the allegations of both counts as a single charge.

The order denying the motion to dismiss the indictment is affirmed. The orders requiring the State to elect and denying its motion to amend are reversed.

No. 106:

*For affirmance*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.

No. 107:

*For reversal*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.