# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4920-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY BARHAM, a/k/a TONEY
BARHAM, ANTHONY MAURICE
BARHAM, JEFF RICHARDSON and
MAURICE WILLIAMS,

    Defendant-Appellant.

_____

Submitted May 8, 2018 — Decided July 10, 2018

Before Judges Fasciale and Moynihan.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 12-
12-2881.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele A. Adubato, Designated
Counsel, on the brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Matthew
E. Hanley, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant appeals from his convictions for third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count one as amended); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (count three as amended); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count five) arguing:

POINT I

IT WAS IMPROPER FOR THE TRIAL COURT TO AMEND THE INDICTMENT CHARGING ANOTHER STATUTORY OFFENSE OVER THE OBJECTION OF DEFENDANT.

POINT II

THE TRIAL COURT'S REFUSAL TO STRIKE THE JURY PANEL FOLLOWING THE DISCLOSURE THAT JURORS HAD DONE INTERNET RESEARCH ON THE CASE WAS ERROR AND DENIED DEFENDANT A FAIR TRIAL.

POINT III

THE TESTIMONY OF NURSE O'DONNELL WAS IMPROPER AND EXCEEDED THE PROPER LIMITS OF TESTIMONY OF LAY WITNESSES.

POINT IV

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED FOR THE STATE'S FAILURE TO ESTABLISH CHAIN OF CUSTODY.

POINT V

COMMENTS MADE BY THE PROSECUTOR DURING HER SUMMATION DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT VI

THE AGGREGATE SENTENCE IMPOSED BY THE COURT OF THIRTY (30) YEARS WITH TWENTY-TWO YEARS

2

(22) OF PAROLE INELIGIBILITY WAS EXCESSIVE AND
SHOULD BE REDUCED.

We agree with the State's concession that the sentence imposed was barred by statute. We therefore remand the case for resentencing but otherwise affirm the convictions.

I

The trial court granted the State's Rule 3:7-4 motion to amend the third count of the indictment from second-degree sexual assault under N.J.S.A. 2C:14-2(c)(1), to second-degree sexual assault under N.J.S.A. 2C:14-2(c)(4), a charge that had not been presented to the grand jury. We review a trial court's decision to amend an indictment under an abuse of discretion standard. See State v. Reid, 148 N.J. Super. 263, 266 (App. Div. 1977).

Our Supreme Court ruled the constitutional protections afforded under Article I, Paragraphs 8 and 10 of the New Jersey Constitution[1] necessitate that:

> First, an indictment must "inform the defendant of the . . . offense charged against him, so that he may adequately prepare his defense." State v. Lefante, 12 N.J. 505, 509 (1953); see State v. Wein, 80 N.J. 491, 497 (1979); State v. La Fera, 35 N.J. 75, 81 (1961); State ex rel. Bruneel v. Bruneel, 14

---

[1] "No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury . . . ." N.J. Const. art. I, ¶ 8. "In all criminal prosecutions the accused shall have the right . . . to be informed of the nature and cause of the accusation . . . ." N.J. Const. art. I, ¶ 10.

A-4920-15T2

> N.J. 53, 60 (1953). Second, the indictment must be sufficiently specific to enable the defendant to avoid a subsequent prosecution for the same offense. Wein, 80 N.J. at 497; La Fera, 35 N.J. at 81; Lefante, 12 N.J. at 509. Finally, the indictment must be sufficiently specific "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." State v. Boratto, 80 N.J. 506, 519 (1979); Wein, 80 N.J. at 497; La Fera, 35 N.J. at 81.
>
> [State v. LeFurge, 101 N.J. 404, 414-15 (1986).]

Defendant does not suggest he was prejudiced by the amendment or that he was unprepared to meet the amended charge. He contends the change to the charge involved a substantive error in the indictment that was corrected by the addition of a substantially different offense, providing a different element which required a re-presentment to the grand jury.

Both sections of N.J.S.A. 2C:14-2(c) proscribe the commission of "an act of sexual penetration with another person." The indicted charge requires that the State prove "[t]he actor use[d] physical force or coercion" even though the victim did not "sustain severe personal injury." N.J.S.A. 2C:14-2(c)(1). The amended charge has different elements: "[t]he victim [was] at least [thirteen] but less than [sixteen] years old and the actor [was] at least four years older than the victim." N.J.S.A. 2C:14-2(c)(4).

4

"In order to preserve the grand-jury function and protect the constitutional guarantee to indictment by a grand jury, [our Supreme] Court has insisted that 'the indictment must allege all the essential facts of the crime, lest an accused be brought to trial for an offense the grand jury did not find.'" LeFurge, 101 N.J. at 418 (quoting La Fera, 35 N.J. at 81). A trial court may, pursuant to Rule 3:7-4 amend an indictment "to correct an error in . . . the description of the crime intended to be charged . . . provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits." The "description of the crime may be changed unless it is 'an essential element.'" State v. Walker, 322 N.J. Super. 535, 553 (App. Div. 1999) (quoting State v. J.S., 222 N.J. Super. 247, 258 (App. Div. 1988)).

We have not been provided with a copy of the grand jury transcript, but perceive from the third and fourth counts of the indictment that the panel was presented with evidence to find N.G.'s date of birth is June 10, 1998, and he was thirteen on the date of the crime. Inasmuch as defendant was tried as an adult, he had to be at least eighteen — more than four years older than N.G. We perceive no challenge to the trial court's jurisdiction based on defendant's age. See N.J.S.A. 2C:4-11.

Although the amended charge was not presented to the grand jury, evidence proving the elements of the charge was sufficiently placed before the panel save for defendant's age.[2] While the better course would have been to present evidence related to the elements of sexual assault under N.J.S.A. 2C:14-2(c)(4) to the grand jury, we see no infraction of the tripartite constitutional guarantees, LeFurge, 101 N.J. at 414-15, by the trial court's amendment of one second-degree sexual assault with another second-degree sexual assault when the only difference in the elements of those crimes was the ages of the victim and defendant; the former was proved by the evidence, the latter was implicated.

II

After the court and both counsel were advised that a juror — identified as "Juror Number 10" — informed a court officer she heard other jurors discussing their internet research about defendant and the case, defense counsel moved to strike the jury panel. The trial court, in counsel's presence, individually interviewed Juror Number 10 who said that on the day before as the jurors were waiting to enter the courtroom after lunch

> there were a lot of people having loud conversations about this, that and the other. And then one guy said, and he's here, something about the nature of the case. And

_____

[2] Such evidence may have been presented but the devoid record does not inform us.

> then he said [he] Googled it and [the lady he was conversing with] said, me, too. And then he started talking about, well, he's out on bond for half a million dollars. And then finally somebody next to me said, you know, you're not supposed to be talking about it.

She later, answering defense counsel's question, recalled "he just said something about sexual assault" — one of the charges against defendant. When asked by the assistant prosecutor about the number of people in the general area, Juror Number 10 said, "Twenty? Maybe more."

Defense counsel resisted the court's stated plan to conduct a voir dire of the other jurors to ascertain "how far the research went" and how many people were present during the conversation, rather than simply dismissing the entire panel. The court later denied defendant's application to strike the panel.

Jury selection continued into the next court day, during which jurors were asked questions regarding internet research and discussions about same. Arguing there were "still conversations . . . about Googling [and] Google searches," defense counsel renewed defendant's application to strike the panel. The court denied the motion which defendant now contends, quoting the Court in State v. Bey, 112 N.J. 45, 75 (1988), deprived him of a constitutionally guaranteed "jury that is free of outside

influences and will decide the case according to the evidence and arguments presented."

Our standard of review recognizes "the trial court is in the best position to determine whether the jury has been tainted." State v. R.D., 169 N.J. 551, 559 (2001). "The abuse of discretion standard of review should pertain when reviewing such determinations of a trial court. Application of that standard respects the trial court's unique perspective." Ibid. And in the context of juror exposure to pretrial publicity, our Supreme Court ruled:

> The appellate standard for reviewing a voir dire procedure is whether, despite the trial court's efforts, there still existed a "realistic likelihood of prejudice" resulting from pretrial publicity. State v. Williams, 93 N.J. 39, 63 (1983).
>
> Preliminarily, an appellate court must distinguish "between cases in which the trial atmosphere is so corrupted by publicity that prejudice may be presumed, and cases in which pretrial publicity, while extensive, is less intrusive, making the determinative issue the actual effect of the publicity on the impartiality of the jury panel." State v. Biegenwald (Biegenwald I), 106 N.J. 13, 33 (1987) (citations omitted). . . .
>
> When a court cannot assume prejudice, the inquiry to determine the existence of a realistic likelihood of prejudice is whether under the totality of the circumstances the voir dire resulted in a fair and impartial jury. State v. Biegenwald (Biegenwald II), 126 N.J. 1, 22-23 (1991). In making that

> determination, an appellate court should show appropriate deference to the trial court's assessment of "matters of credibility, judgment and discretion which should not ordinarily be disturbed on appeal." State v. Gary, 229 N.J. Super. 102, 111 (App. Div. 1988); see also State v. Singletary, 80 N.J. 55, 63-64 (1979); State v. Jackson, 43 N.J. 148, 160 (1964).
>
> [State v. Harvey, 151 N.J. 117, 211 (1997).]

The trial court properly declined defense counsel's urging to strike the panel before determining what was discussed or overheard. The court heeded the Supreme Court's directive in Bey — as we later synopsized in State v. Scherzer, 301 N.J. Super. 363, 487 (App. Div. 1997) — that required the court

> to first examine the information to determine if it has the capacity to prejudice the defendant, and if it does, the judge must conduct voir dire, preferably individually in camera, to determine whether any jurors were exposed to the information. Bey, 112 N.J. at 84-86. If they were, the judge then questions each juror individually to determine what information was learned and whether the juror is capable of deciding the case impartially, based solely on the evidence presented at trial. Id. at 86-87.

The court's voir dire about the reach of the jurors' research and discussions is not challenged on appeal. Moreover, defendant does not point to any non-evidential information to which some jurors were exposed, revealed during the voir dire, which potentially impacted their ability to decide the case impartially.

9

Defendant instead contends that his submission of appended "substantial extraneous material . . . contained . . . internet articles about defendant and the case. In addition to the [indicted] charges, mention was made of [defendant's] $500,000[] bail, that he was on parole supervision on GPS and he was a former Megan's Law violator."

We perceive nothing from the trial court's voir dire, or otherwise, that there is a "realistic possibility" that any juror accessed the extraneous internet material that defendant appended. See Bey, 112 N.J. at 86 (requiring a court, once "satisfied that . . . published information has the capacity to prejudice the defendant" to "determine if there is a realistic possibility that such information may have reached one or more of the jurors" by conducting a voir dire to determine juror exposure). Appending the internet search results to his brief does not establish a realistic possibility that jurors found that information. The trial court, after conducting the voir dire of "all the rest of the [jurors]," found "they either didn't hear it at all, didn't consider it, and if they did hear something about bail it didn't matter anyway." He further found that the questioned jurors "either said they didn't hear anything, they haven't done any research, or one mentioned that a prior juror was gonna get excused

[for an unrelated reason] did the research but they didn't discuss it further."

Even when a juror has been exposed to extraneous information, a new trial is not always necessary. R.D., 169 N.J. at 559. The United States Supreme Court recognized, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Ibid.

We see no abuse of discretion in the trial court's findings, after voir dire, that the jurors' exposure to extraneous information did not have the capacity to influence their decision, warranting dismissal of the panel. Under the circumstances, we determine a realistic likelihood of prejudice was not established; the procedure implemented by the trial court resulted in a fair and impartial jury.

A-4920-15T2

In considering defendant's argument that the SANE[3] nurse's testimony exceeded the proper limits of lay witness testimony, we first clarify that, notwithstanding citations by both parties to N.J.R.E. 701 regarding lay witnesses, defendant challenges the nurse's testimony only to the extent that it bolstered N.G.'s credibility; not that it was inadmissible under the lay witness evidence rule. Indeed, the trial judge sustained defense counsel's objection to the State's attempt to elicit the reason why N.G. did not suffer visual anal tearing despite allegations of penile-anal penetration.

The SANE nurse, after recounting the version of events N.G. related during a pre-examination interview, identified and described the abrasions depicted in photographs she took of N.G. on the morning of the exam. The following colloquy took place during direct examination regarding the first two photographs:

> [PROSECUTOR:] We'll start with S-17M as in Mary. May I ask again for -- to explain what's in the photo.
>
> [SANE NURSE:] This is an abrasion to the patient's left knee that he says was sustained during his struggle. He said he was running out the car, he fell a couple of times, he was put up against a concrete wall. So this is consistent with what he told me.

---

[3] Sexual Assault Nurse Examiner.

. . . .

[PROSECUTOR]: S-17H is being published.

. . . .

[PROSECUTOR:] What is in that photo?

[SANE NURSE:] That looks like an abrasion to his right buttock, or scratch mark, again, consistent with the story that was told to me by the patient about the struggle that he had.

. . . .

. . . So this could be a scratch. It could be an abrasion from concrete. Regardless, it's still an abrasion. Abrasion just means that the skin has been taken away from the surface of the body. There's no redness. It wasn't deep enough to cause any bleeding, but it's still an abrasion. There are all different types of abrasions, different grades depending on how deep.

[PROSECUTOR:] Was that consistent with the story?

[SANE NURSE:] Yes, it was consistent.

Defense counsel objected, not to the testimony that the photos depicted abrasions, but to the nurse's conclusions "that something is consistent with [N.G.'s] story would be inappropriate as a non-expert." The judge sustained the objection "as to form" and told the prosecutor, "You might want to re-ask the question"; the following ensued:

[PROSECUTOR:] This abrasion occurred based on what the, what the victim told you?

[SANE NURSE:] Yes.

13

[PROSECUTOR:] Okay. It was, it was consistent with that?

[SANE NURSE:] Yes.

[PROSECUTOR:] What he told you.

[SANE NURSE:] Yes.

Defense counsel objected; it was summarily overruled. The nurse identified abrasions in two other photos, testifying without further objection, that one was "consistent with the story that was told me [by N.G.] that morning," and the other was "consistent again, with the injuries that he described he had."

After the State's failed attempt to elicit why N.G. did not experience anal tearing, the prosecutor continued her direct examination of the nurse:

> [PROSECUTOR:] Ms. O'Donnell, did it, did it draw alarm to you that there was -- did the victim have tearing in this case?
>
> [SANE NURSE:] No.
>
> [PROSECUTOR:] All right. Did that draw alarm to you?
>
> [SANE NURSE:] No.
>
> [PROSECUTOR:] Was there anything, did you still, based on the information that you provided, did you still believe that anal penetration had occurred?
>
> [SANE NURSE:] The victim told me that he was, so I treat it as such and attempt to collect evidence.

14

[PROSECUTOR:] The lack of the tearing, did that conflict in any way with his story?

[SANE NURSE:] No.

No objection was made.

"In general, a trial court is afforded 'considerable latitude regarding the admission of evidence,' and is to be reversed only if the court abused its discretion." State v. Nelson, 173 N.J. 417, 470 (2002) (quoting State v. Feaster, 156 N.J. 1, 82 (1998)). This is because a trial court, having "intimate knowledge of the case, is in the best position to engage in this balancing process." State v. Ramseur, 106 N.J. 123, 266 (1987).

The issue of credibility "is peculiarly within the jury's ken and with respect to which ordinarily jurors require no expert assistance." State v. J.Q., 252 N.J. Super. 11, 39 (App. Div. 1991), aff'd, 130 N.J. 554 (1993). We also think that comment is apropos to non-experts because "the jury is charged with making credibility determinations based on ordinary experiences of life and common knowledge about human nature, as well as upon observations of the demeanor and character of the witness." State v. Jamerson, 153 N.J. 318, 341 (1998).

Contrary to defendant's argument that "the questions posed to the nurse regarding whether N.G.'s abrasions were consistent with his version of events was nothing more than a veiled attempt

to bolster [his] credibility," a careful review of the record reveals that was not the case. The nurse made clear her "report is the alleged victim's account of what happened to [him] on that particular instance. . . . It's [his] account of what happened . . . ." Her testimony was clearly dependent on whether the jury believed N.G.'s testimony. When the nurse testified that the abrasions were consistent with what N.G. told her, it is obvious she meant that the injuries matched "the story" N.G. told her. At no time did she ever state she believed N.G.'s version or accepted it as true. That decision was left to the jury in this case in accordance with the trial court's instruction to the jury on their role in judging credibility.

As to the testimony regarding the lack of anal tearing, because no objection was made, it must be judged under the plain-error standard: that is, whether its admission "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; State v. Macon, 57 N.J. 325, 335-37 (1971).

We are unpersuaded by defendant's similar argument that that testimony improperly bolstered N.G.'s credibility. We disapprove of the question posed by the prosecutor: "based on the information that you provided, did you still believe that anal penetration had occurred?" The nurse's answer, however, did not follow the prejudicial path: "The victim told me that he was, so I treat[ed]

16                                                          A-4920-15T2

it as such and attempt[ed] to collect evidence." So when the nurse negatively answered the prosecutor's question — "The lack of the tearing, did that conflict in any way with his story?" — the issue of N.G.'s credibility was again left in the jury's hands. It was already established that the victim alleged only the tip of defendant's penis penetrated his anal cavity. The lack of tearing did not conflict with N.G.'s version. Although the better course would have been to curtail the State's comparative pursuit, we do not determine this brief line of questioning amounted to plain error.

## IV

Defendant claims five comments made by the prosecutor during her summation — none of which were objected to — "substantially prejudiced defendant's right to a fair evaluation of his case and had a clear capacity to affect the verdict" because she demeaned the defense, commented on facts not in evidence and vouched for witnesses' credibility.

The mere "finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). Accordingly, the prosecutor's statements must constitute a clear

17                                                      A-4920-15T2

infraction that substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense. <u>State v. Roach</u>, 146 N.J. 208, 219 (1996); <u>State v. Bucanis</u>, 26 N.J. 45, 56-57 (1958).

Besides averring the prosecutor "commenced her summation stating that defense arguments were meant to 'mislead and confuse you,'" defendant quotes — often incorrectly and out of context — other snippets of the prosecutor's summation:

First:

> Again, the witness has no motive to deceive you, she supports and corroborates what N.G. has already told you, and she has no bias in the case. I submit to you that she was credible, and supports and corroborates everything that N.G. told you.

Second:

> Again, we're talking about an identification 10 months later. No. That's called an investigation that took 10 months. That's called the State making sure and corroborating and finding evidence and speaking to people sending the DNA out, doing an investigation.

Third:

> I heard surveillance tapes. Yeah. Surveillance tapes can __ __ a little, especially if you have them high up on warehouse, can come off a little blurry.

And fourth:

> I think defense in her argument we don't Know how it got there I submit it got there by

vehicle. It got sent by car. I mean the person who actually picked this up and then put it in the car and got it to Annette Estilow. No, that person didn't testify . . . But Annette Estilow testified and she received the kit.

We consider the summation in its entirety in order to ascertain the "fair import" of the State's closing. State v. Wakefield, 190 N.J. 397, 457 (2007).

Notwithstanding defendant's argument, the prosecutor did not contend defense counsel's entire summation was intended "to mislead and confuse" the jury. The prosecutor responded to that portion of defense counsel's summation where she said the nurse worked for the Essex County Prosecutor's Office; the prosecutor attempted to dispel the implication that "there's some big conspiracy" between the nurse and prosecutor.

Another portion cited by defendant was edited to obfuscate the prosecutor's purpose in telling the jury why the nurse's testimony was credible. Defense counsel started her summation by telling the jury, "When it comes to the testimony of witnesses you are to consider their credibility, their demeanor, who called them here, do they have any motive or bias to testify?" The prosecutor's full comments about the nurse clearly shows she was responding to defense counsel's statement, and defense counsel's attack on the procedures followed by the nurse in examining N.G.

"A prosecutor may argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside the record as support for the witness's credibility." State v. Walden, 370 N.J. Super. 549, 560 (App. Div. 2004). Weighing defendant's failure to object to the remarks at the time they were made against the offending conduct, we cannot conclude the prosecutor's tactics "interfer[ed] with the jury's right to make the credibility determination," Frost, 158 N.J. at 88, or deprived defendant of a verdict that "fairly reflected the evidence," State v. Roman, 382 N.J. Super. 44, 61 (App. Div. 2005).

Defendant does not make clear the basis for his objection to the prosecutor's comment about N.G.'s identification of defendant ten months after the incident. We perceive that she was responding to defense counsel's comments regarding the time lag between the crime and the identification.

We also find misleading defendant's argument that the prosecutor "made statements that were not in evidence" when she referenced surveillance tapes. Again, the snippet quoted by defendant in his merits brief does not allow a full appraisal of the State's summation which directly responded to defense counsel's argument that the State presented no evidence regarding any efforts to locate surveillance tapes. The prosecutor did not comment on tapes as if they were evidence. She rebutted defense

counsel's point and focused on what she argued was better evidence — DNA.

The State concedes there was no evidence to support the prosecutor's comment — in an attempt to establish a full chain of custody — that the DNA evidence was transported by car to the New Jersey State Police forensic scientist.

We determine the summation taken as a whole — considering the prosecutor's misstatement — was not "so egregious that it deprived the defendant of a fair trial." Frost, 158 N.J. at 83. The jury had the opportunity to consider defendant's attack on the transportation of the DNA evidence and was instructed counsel's comments in summation were not evidence. The prosecutor's unsupported comment did not amount to a clear infraction that substantially prejudiced defendant's fundamental right to have the jury fairly evaluate the merits of his case.

V

Defendant's argument that his motion for judgment of acquittal should have been granted because the State failed to establish the chain of custody for a buccal swab taken from

defendant is without sufficient merit to warrant discussion in this opinion.[4]  R. 2:11-3(e)(2).

A motion for judgment of acquittal at the close of the State's case may be granted "if the evidence is insufficient to warrant a conviction."  R. 3:18-1.

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

N.G.'s testimony about the assault and his identification of defendant were sufficient to defeat that motion, even without the DNA evidence.

## VI

The trial court granted the State's motion for extended terms on all three convictions and sentenced defendant to the maximum prison terms: twenty years for second-degree sexual assault, concurrent to ten years for third-degree criminal restraint, consecutive to ten years for third-degree terroristic threats.

---

[4] We note the buccal swab was not entered into evidence; we suppose that is the reason the chain of custody evidence was not challenged in an evidentiary motion.

The trial court's imposition of extended terms — mandatory on count three and discretionary on counts one and five — as conceded by the State, was illegal.  See State v. Robinson, 217 N.J. 594, 598 (2014) (holding "the plain language of N.J.S.A. 2C:44-5(a)(2) bars the imposition of a discretionary extended term when the prosecutor has requested one and the trial court is obliged to impose a mandatory extended term on another offense in the same proceeding").  As in Robinson, "[o]ur disposition requires vacation of defendant's sentence and that the matter be remanded for imposition of a new sentence," necessitating a new sentencing proceeding, id. at 611, at which "the trial court should view defendant as he stands before the court on that day," State v. Randolph, 210 N.J. 330, 354 (2012).  We therefore need not consider defendant's excessive sentencing argument.

Affirmed but remanded for resentencing proceedings.  The amended judgment of conviction should reflect the proper statutory citation for the count-three crime: N.J.S.A. 2C:14-2(c)(4).  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4920-15T2